**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>EDWIN SANCHEZ,<br><br>        Defendant. | Criminal Action No. 21-560 (CKK) |

**MEMORANDUM OPINION**
(June 3, 2026)

Pending before this Court is Defendant Edwin Sanchez's [43] Motion to Reduce Sentence ("Def.'s Mot."), which is brought pursuant to 18 U.S.C. §3582 (c)(2) and U.S.S.G. § 1B1.10; the United States' [48] [redacted, public version of its] Opposition to Defendant's Motion to Reduce Sentence ("Govt. Opp'n"); and Defendant's [50] Reply in Support of Motion to Reduce Sentence ("Def.'s Reply"). Upon review of the pleadings, the relevant legal authorities, the record in this case, and for the reasons set forth herein, this Court DENIES Defendant Edwin Sanchez's Motion to Reduce Sentence.

## I. BACKGROUND

On April 1, 2022, Defendant Edwin Sanchez (hereinafter "Defendant" or "Mr. Sanchez") entered into a plea agreement with the Government whereby he pleaded guilty to one count of Bank Robbery, in violation of 18 U.S.C. § 2113(a). Plea Agreement, ECF No. 20. The circumstances of the bank robbery for which Defendant was charged are as follows. On November 30, 2020, Mr. Sanchez entered the TD Bank on K Street, Northwest, in Washington, D.C. and he told the teller that it was an armed robbery, and she was to give him money and her wallet. Govt. Opp'n, ECF No. 48, at 1-2. Defendant produced a butcher knife. *Id.* at 2. The

1

teller stated that she did not have a wallet, but she did give Defendant $880 from the cash register. As he walked away, the teller fainted and hit her head. *Id.* While the robbery was in progress, another bank employee hit the silent alarm to summon the police. *Id.* When the police arrived, the employees identified Defendant, who subsequently admitted to robbing the TD Bank. *Id.*

The Presentence Report ("PSR") in this case calculated a base offense level of twenty, and then added two levels for robbing a financial institution and three levels for brandishing a knife. PSR, ECF No. 25, at 5. Considering Defendant's acceptance of responsibility, he was assigned a three-level reduction, bringing his total offense level to twenty-two. *Id.* Defendant was assigned eight criminal history points for his prior convictions and two "status points" because he committed the bank robbery offense while he was under a criminal justice sentence. *Id.* at 11. Ultimately, with a total offense level of twenty-two and a Criminal History category of V, Mr. Sanchez's sentencing guideline range was 77-96 months, and on March 6, 2023, he was sentenced to 77 months, followed by three years of supervised release. Judgment, ECF No. 39; *see also* Plea Agreement, ECF No. 20, at 3 (acknowledging that "the government will recommend at sentencing that [Defendant] be sentenced to the low-end of the applicable guideline sentencing range"). Defendant is currently incarcerated with a projected release date of July 8, 2028. On March 13, 2026, Defendant filed the instant Motion to Reduce Sentence, pursuant to 18 U.S.C. § 3582(c)(2). The Government opposes Defendant's Motion.

## II. LEGAL STANDARD

Pursuant to 18 U.S.C. § 3582(c)(2), a defendant may move for a reduction in his term of imprisonment if he was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission ... if such reduction is consistent with applicable policy

statements issued by the Sentencing Commission" and the §3582(c)(2) sentencing factors. 18 U.S.C. §3582(c)(2); U.S.S.G. §1B1.10(a)(l)(policy statement referencing Section 3582(c)(2)). In Section 1B1.10 (d) of the Guidelines, the Sentencing Commission identified several covered amendments, including Part A of Amendment 821, which may be applied retroactively to limit the overall criminal history impact of status points. More specifically, the Sentencing Commission eliminated the old guidelines' approach of adding two points whenever a defendant committed an offense while under a criminal justice sentence, and now adds a single status point for defendants who otherwise have seven or more criminal history points, and no status points for those defendants with fewer than seven criminal history points. U.S.S.G. § 4A1.1(e).

A defendant's motion for reduction of sentence is evaluated in two steps. *United States v. Wyche*, 741 F.3d 1284, 1292 (D.C. Cir. 2014). Step one involves determining whether the defendant is eligible for a reduced sentence and, if so, calculating the amended Guidelines range. *Dillon v. United States*, 560 U.S. 817, 826-827 (2010). Step two involves the court "consider[ing] any applicable §3553(a) factors and determin[ing] whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Id.* at 827. Courts must consider public safety considerations and may consider information regarding the post-sentencing conduct or situation of the defendant, whether positive or negative. *See, e.g., United States v. Darden*, 910 F.3d 1064, 1068 (8th Cir. 2018). If a court decides in its discretion to grant a sentence reduction, it generally may not reduce the term of imprisonment to a term that is less than the minimum of the new guideline range, U.S.S.G. §1B1.10(b)(2)(A), and "in no event may the reduced term of imprisonment be less than the term of imprisonment the

defendant has already served." U.S.S.G. §1B1.10(b)(2)(C).

Finally, "[t]he grant of authority to the district court to reduce a term of imprisonment is unambiguously discretionary," even when the guideline range is actually reduced. *United States v. Vautier*, 144 F.3d 756, 760 (11th Cir. 1998); *see also United States v. Young*, 555 F.3d 611, 614 (7th Cir. 2009) (noting that a district court has "substantial discretion" in deciding whether to reduce a sentence).

### III. ARGUMENT

Below the Court addresses Defendant's eligibility and entitlement to a sentencing reduction.

### A. Eligibility

Defendant argues, and the Government agrees, that Defendant is eligible for a sentencing reduction under 18 U.S.C. § 3582(c)(2), which permits courts to reduce sentences "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission[.]" Def.'s Mot., ECF No. 43, at 3 (internal citations omitted); Govt. Opp'n, ECF No. 48, at 3 (noting that the Defendant satisfies the first, eligibility step). Such reduction must be "consistent with applicable policy statements issued by the Commission." 18 U.S.C. § 3582(c)(2). Defendant notes that the Commission's policy statement, *inter alia*, limits any reduction to no less than the low-end of the now-applicable guidelines' range, and this requirement is met here. Def.'s Mot., ECF No. 43, at 3. In the instant case, Defendant's now-applicable guidelines' range is 63-78 months, based on a total offense level of 22, eight criminal history points, one status point, and a criminal history category of IV. Defendant requests that the Court resentence him to 63 months – which is the low-end of the amended guidelines' range – resulting in a 14-month

4

sentence reduction and a projected release date of May 8, 2027.  Def.'s Mot., ECF No. 43, at 4.

**B. Entitlement**

While the Government acknowledges that Defendant is eligible for a sentencing reduction, the Government disagrees with Defendant regarding his alleged entitlement to such reduction.  Below is a summary of the arguments proffered by both sides.

**1. Defendant's Position**

As explained in more detail below, Defendant relies upon his analysis of the Section 3553(a) factors in the context of Defendant's mental health history, his positive response to mental health treatment, his completion of basic cognitive skills classes, and his clean disciplinary record while incarcerated.  Defendant contends that, '[a]t sentencing, this Court considered Mr. Sanchez's mental health condition as one of the factors supporting a low-end sentence."  Def.'s Mot., ECF No. 43, at 4.  Defendant notes that he was diagnosed with Paranoid Schizophrenia after he enlisted with the United States Marines at 18 years of age.  *Id.*  Defendant asserts that his "subsequent involvement in the criminal legal system was the direct result of his mental illness, as he spent much of this time living on the streets, without medication, and out of touch with his support system."  *Id.*; *see* Def.'s Sent. Mem., ECF No. 34, at 8.

In contrast, while incarcerated, Defendant argues that he has been a "model inmate" without a single disciplinary incident, which is a "strong testament to his rehabilitation and commitment to adhering to the rules."  *Id.* at 4; *see* Ex. 1, BOP Records at 11 (Discipline Data).  Mr. Sanchez has paid towards his special assessment and restitution balances regularly.  *Id.* at 4; *see* Ex. 1, BOP Records at 10 (Inmate Financial Responsibility).  He has completed an Illness Management and Recovery course and has requested participation in a Basic Cognitive Skills class as well as cognitive behavioral therapy-based classes to work on anger management and

avoid criminal thinking errors. *Id.* at 4 (internal citation omitted). Furthermore, while incarcerated, Mr. Sanchez has worked as a recreation specialist, unit orderly, and in food and dining service. Def.'s Mot., ECF No. 43, at 5. Moreover, Mr. Sanchez's custody classification scoring was reduced sufficiently that he was moved from a high-security penitentiary (USP Coleman I) to a medium-security federal correctional institution (FCI Hazelton). *Id.*

Defendant reports also that he has made significant progress with his mental health insofar as he sees a psychiatrist monthly and a psychologist weekly; he is compliant with his psychotropic medications; and he has been stable enough for his care level to be reduced from a CARE2-MH to a CARE1-MH. *Id.* Mr. Sanchez "believes that his current plan will continue to work for him once he is released [as] [h]e has found a medication . . . and dosage that works well for him and denies any issues or hallucinations." *Id.* Regarding post-incarceration care, Mr. Sanchez could be linked with a "core services agency" within 30 days prior to his release, or, if it is determined that he needs "assertive community treatment," he would start that process 60 days prior to release. *Id.* at 6. Additionally, Defendant notes that he regularly communicates with his family and "now has the support system to foster successful release." *Id.*; *see* Ex. 3 (email from Mr. Sanchez's parents affirming their support); *see also* Ex. 1. BOP Records at 12 (identifying family communication as "GOOD"). In sum, Defendant argues that he is "more prepared for release than he was in 2020" and he notes that even if the Motion is granted, Defendant still has more than a year of incarceration ahead of him to continue making progress in his rehabilitation.

### 2. The Government's Position

While the Court commends Mr. Sanchez for the progress he has made, the Government argues, and this Court agrees, that the Section 3553(a) factors do not warrant a sentence

reduction because of defendant's extensive criminal history and the fact that "his current sentence remains within the amended guideline range." Govt. Opp'n, ECF No. 48, at 10.  While Defendant asserts that the Government's analysis "relies too heavily on his crime and criminal history, both already accounted for in the range," Def.'s Reply, ECF No. 50, at 1,  the Court notes that public safety is an integral part of its consideration.  In this case, Defendant has engaged in criminal activity demonstrating a pattern of threats and aggression, including simple assault, threats to "stab the President" while possessing a box cutter, an "attempt to rob an American Airlines ticket counter" while employing a pair of scissors and pointing them at a victim, and the 2017 robbery of a TD Bank. Govt. Opp'n, ECF No. 48, at 8-9.  While this Court commends Defendant for his lack of disciplinary infractions during his current incarceration, the Government notes that, previously, "defendant incurred no violations while incarcerated [on the 2017 TD Bank robbery charge]" but he "was released from custody on November 27 2020 [and] a mere *three days later*, he committed the instant offense." *Id.* at 10.  The Government asserts that "while defendant may generally behave appropriately in the highly restricted environment of a federal prison, he has repeatedly demonstrated that he poses a serious danger to others while in the broader community." Govt. Opp'n, ECF No 48, at 12. Accordingly, the Court finds that Section 3553(a) factors do not favor a reduction in sentence as the Court is unconvinced that Defendant poses no danger to the community.  Defendant's criminal history and the nature and circumstances of his bank robbery offense demonstrate both escalation and recidivist tendencies.  Furthermore, after a period where Mr. Sanchez also incurred no infractions while incarcerated, he then engaged in criminal activity just days after his release.

Moreover, while the Court commends Defendant for compliance with mental health

7

treatment and medication, the Court considers Defendant's relatively brief period of compliance against Defendant's years of non-compliance. The Court finds that this imbalance also weighs against a sentence reduction because of community safety concerns (even when considering that as-yet-undetermined mental health services are available to Defendant post-release).

Additionally, as the Government notes, Defendant's current sentence of 77 months is within the amended Guidelines range, albeit at the high end. The Government explains, however, that "many courts have denied sentence reductions in situation where guideline amendments lowered the sentencing ranges." Govt. Opp'n, ECF No. 48, at 7 (string citing circuit court and district court cases). In response to this argument, Defendant engages in a lengthy discussion about the "anchoring effect of the guidelines range" to argue for a sentence at the low end of the guideline range. Def.'s Reply, ECF No 50, at 1-4. In this case, however, the Court determined that a 77-month sentence (which happened to be at the low end of the prior applicable range) was appropriate considering the record in this case, and that sentence remains appropriate.

While Defendant also relies upon his educational and work endeavors, and the rebuilding of his relationship with his parents – all of which are commendable – none justify a sentence reduction. As the Government notes, "[p]risoners are supposed to follow the rules, take classes, work at a job, and otherwise attempt to improve themselves," Govt. Opp'n, ECF No. 48, at 10 (citing *United States v. Logan*, 97-CR-0099, 2021 WL 1221481, at *8 (D. Minn. Ar. 1, 2021). "That a prisoner does so means that he has met baseline expectations, not that he has done something extraordinary. . . " *Id.*

Furthermore, the Court agrees with the Government that there is no evidence that Defendant's family is better equipped to support him post-incarceration than when he engaged

in criminal activity in the past. *See* Ex. 3 (a one-paragraph email from Defendant's parents, noting generally that "their home will always be open" to Defendant and that they will "always help and support him" but proffering no specifics on how they intend to assist Mr. Sanchez).

Accordingly, having considered the record in this case and the arguments presented by the parties, in its discretion, this Court declines to reduce Defendant's sentence. A separate Order accompanies this Memorandum Opinion

_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE